**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| **IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION**<br><br>This document relates to:<br><br>*Crawford v. Syngenta Crop Protection LLC, et al.*,<br>No. 3:22-pq-00807-NJR | Case No. 3:21-md-3004-NJR<br><br>MDL No. 3004<br><br>Hon. Judge Nancy J. Rosenstengel |

**SYNGENTA'S RESPONSE TO PLAINTIFF'S MOTION FOR REMAND AND COSTS**

Defendant Syngenta Crop Protection LLC ("Syngenta") responds to Plaintiff's Motion for Remand and Costs (ECF 6). The Court should deny that motion and retain this case for a simple reason: Plaintiff acknowledges that this Court has subject matter jurisdiction over this case. *See id.* at 7 n.18. She nevertheless argues the Court should remand based on a misreading of the forum defendant exception in 28 U.S.C. § 1441(b)(2). Every circuit to consider this argument has rejected it. The Court should not accept the invitation to create a circuit split and ignore the statute's plain text all in service of efforts by Plaintiff's Counsel to circumvent MDL coordination.[1]

**BACKGROUND**

On April 7, 2021, a plaintiff with claims pending in the Northern District of California asked the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate similar cases into a

---

[1] As the Court is aware, additional plaintiffs have moved to remand similar cases in this proceeding to state court. *See, e.g.*, Mot. to Remand, *Scobey v. Syngenta Crop Protection LLC*, 3:22-pq-00893-NJR, Dkt. 6; Mot. to Remand, *Anderson v. Syngenta Crop Protection LLC*, 3:22-pq-00894-NJR, Dkt. 6; Mot. to Remand, *Shelburne v. Syngenta Crop Protection LLC*, 3:22-pq-00808-NJR, Dkt. 6; Mot. to Remand, *Magee v. Syngenta Crop Protection LLC*, 3:22-pq-00809-NJR, Dkt. 8; Mot. to Remand, *Parker v. Syngenta Crop Protection LLC,* 3:21-pq-01654-NJR, Dkt. 24. Defendants expect that additional remand motions may be filed in other actions. In light of this, the Court may wish to defer ruling on Plaintiff's motion here in order to rule on all remand motions in one decision. *See In re Alger, Columbia, Janus, MFS, One Grp., Putnam Mut. Fund Litig.*, 320 F. Supp. 2d 352, 357 (D. Md. 2004) (deferring ruling on motion to remand in MDL).

Paraquat MDL.  *In re: Paraquat Prods. Liab. Litig.*, No. 3004 (J.P.M.L. Apr. 7, 2021), Dkt. 1 ("*JPML*").  Plaintiff's Counsel supported that motion.  They noted that their "law firm represents … hundreds of additional individuals" pressing claims related to paraquat and argued that similar "cases should be centralized in an MDL." *JPML*, Dkt. 16 at 1.  They argued that consolidation was not only appropriate because the cases "involve common questions of fact," but was also necessary because "centralization under § 1407 is the only way to promote the just and efficient conduct of the actions" and avoid the "high" "risk of inconsistent rulings," given that "thousands of related actions are likely to be filed in District Courts throughout the country." *Id.* at 3, 4.

Whereas the initial movant asked the JPML to send the cases to Judge Chen in the Northern District of California, *JPML*, Dkt. 1-1 at 12–15, Plaintiff's Counsel also argued the actions should "be consolidated to the Southern District of Illinois before Chief Judge Rosenstengel," *JPML*, Dkt. 16 at 2, 6, 8.  In urging that result, they pointed specifically to Chief Judge Rosenstengel's extensive and recent experience presiding over coordinated litigation, and the fact that "almost half of the related actions"—including actions by Plaintiff's Counsel—had been filed in the Southern District of Illinois, which "is centrally located to the parties" and "home to a sprawling agricultural industry," which would likely generate additional paraquat-related claims. *Id.* at 6–8.

On June 7, 2021, the JPML created the Paraquat MDL for cases in which plaintiffs allege "injuries associated with exposure to the pesticide paraquat" involving "common factual issues concerning the propensity of paraquat to cause Parkinson's disease." *In re Paraquat Prods. Liab. Litig.*, MDL No. 3004 (S.D. Ill. June 8, 2022), Dkt. 1 at 1–2 ("*MDL*").  In accordance with the recommendation of Plaintiff's Counsel, the JPML assigned the MDL to this Court. *Id.* at 2.  In Case Management Order No. 1, this Court invited attorneys for all plaintiffs to apply for leadership roles. *MDL*, Dkt. 16 at 7–8.  Plaintiff's Counsel did so.  After this Court reviewed 100 applications

and conducted more than 40 interviews, it appointed Counsel here to the Plaintiffs' Executive Committee ("PEC").  *MDL*, Dkt. 169 at 1, 4–7.

Just weeks later, Plaintiff's Counsel abruptly resigned the PEC leadership role on July 26, 2021.  *See MDL*, Dkt. 207.  Thereafter, they began filing lawsuits across the country against Defendants Syngenta and Chevron U.S.A. Inc. ("Chevron").[2]  Counsel filed multiple lawsuits in Illinois state court (among other places) asserting claims from an amalgamation of plaintiffs from eight different states.  Syngenta removed those cases to the Northern District of Illinois based on diversity and federal question jurisdiction and tagged them for transfer by the JPML.  In response, Counsel opposed transfer, insisting that consolidation in the MDL would not promote "a just and efficient resolution," *see JPML*, Dkt. 265-1 at 3, 9; *JPML*, Dkt. 266-1 at 3, 9, and was not necessary to avoid any risk of inconsistent results, *see Leonberger v. Syngenta Crop Protection, LLC*, 1:22-cv-00960 (N.D. Ill. Mar. 8, 2022), Dkt. 21 at 6; *Lewis v. Syngenta Corp Protection, LLC*, 1:22-cv-00961 (N.D. Ill. Mar. 9, 2022), Dkt. 25 at 6–7.

Counsel also filed five lawsuits in Delaware state court—including this case—all involving out-of-state plaintiffs who are completely diverse from Defendants Syngenta and Chevron.  Before service, Syngenta removed these cases to the District of Delaware based on diversity and federal question jurisdiction and tagged them for transfer by the JPML.  This time, Counsel did not oppose

---

[2]  *See, e.g.*, *Lutz v. Syngenta Crop Protection LLC*, No. 210801388 (Pa. Common Pleas Ct. Aug. 16, 2021); *Strawser v. Syngenta Crop Protection LLC*, No. 210802512 (Pa. Common Pleas Ct. Aug. 27, 2021); *Lewis v. Syngenta Crop Protection LLC*, No. 2022-L-000622 (Ill. Cir. Ct. Jan. 19, 2022); *Leonberger v. Syngenta Crop Protection LLC*, No. 2022-L-000858 (Ill. Cir. Ct. Jan. 27, 2022); *Mertens v. Syngenta Crop Protection LLC*, No. 220200931 (Pa. Common Pleas Ct. Feb. 8, 2022); *Sutphin v. Syngenta Crop Protection LLC*, No. 220202598 (Pa. Common Pleas Ct. Feb. 24, 2022); *Atkins v. Syngenta Crop Protection LLC*, No. 220301614 (Pa. Common Pleas Ct. Mar. 15, 2022); *Crawford v. Syngenta Crop Protection LLC*, No. N22C-04-006 SKR (Del. Super. Ct. Apr. 1, 2022); *Shelburne v. Syngenta Crop Protection LLC*, No. N22C-04-007 CLS (Del. Super. Ct. Apr. 1, 2022); *Magee v. Syngenta Crop Protection LLC*, No. N22C-04-008 PRW (Del. Super. Ct. Apr. 1, 2022); *Scobey v. Syngenta Crop Protection LLC*, No. N22C-04-097 SKR (Del. Super. Ct. Apr. 14, 2022); *Anderson v. Syngenta Crop Protection LLC*, No. N22C-04-098 PRW (Del. Super. Ct. Apr. 14, 2022); *Willis v. Syngenta Crop Protection LLC*, No. N22C-05-071 PRW (Del. Super. Ct. May 10, 2022).

transfer.  The JPML then transferred these cases to the Paraquat MDL based on the identity of issues between them and those in the MDL.  *See JPML*, Dkts. 295, 302.  Plaintiff has now moved to remand this action (and those four others) to Delaware state court.  ECF 6 ("Pl. Br.").[3]

## ARGUMENT

This Court unquestionably has subject matter jurisdiction because the amount-in-controversy exceeds $75,000, and there is complete diversity between the parties:  Plaintiff Crawford is a citizen of Tennessee; Syngenta is a citizen of Delaware; and Chevron is a citizen of California and Pennsylvania.  *See* ECF 1 at 4–6.  Plaintiff does not dispute any of this.  Instead, she raises an objection based ostensibly on the forum defendant exception, which she acknowledges does not erect a jurisdictional barrier.  *See* Pl. Br. 7 n.18; *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 380 (7th Cir. 2000) (observing that § 1441(b)(2) "is nonjurisdictional."). In other words, Plaintiff concedes this Court has subject matter jurisdiction based on diversity.

Despite that, Plaintiff suggests that Syngenta must overcome a presumption against removal.  *See* Pl. Br. 6–7.  But given that this case admittedly comes within the Court's diversity jurisdiction, the burden is the other way around:  "[W]henever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff* to find an express exception."  *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697–98 (2003) (emphasis added).

Plaintiff cannot meet that burden.  She attempts to rely on the forum defendant exception, but it does not apply here.  The removal statute provides:  "A civil action otherwise removable solely on the basis of jurisdiction under section 1332(a) of this title [i.e., diversity] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  That provision does not apply

---

[3]    Plaintiff has also filed an unopposed motion to stay the requirements of Case Management Order 10. ECF 7.

and Plaintiff's motion to remand should therefore be denied for two independent reasons.  ***First,***

it is undisputed that the only defendant in this action who "is a citizen of the State" of Delaware—

Syngenta—was not "properly … served" at the time this case was removed.  ***Second,*** because this

Court also has federal question jurisdiction (and supplemental jurisdiction), this case was not

"removable solely on the basis of" diversity jurisdiction.

## I.     THIS COURT HAS DIVERSITY JURISDICTION AND § 1441(b)(2) DOES NOT BAR REMOVAL BECAUSE SYNGENTA WAS NOT "PROPERLY SERVED."

There is no dispute that complete diversity of citizenship exists between Plaintiff, on the

one hand, and Defendants Syngenta and Chevron, on the other.  Nor is there any dispute that the

claims in this case satisfy the amount-in-controversy requirement for diversity jurisdiction.  *See*

28 U.S.C. § 1332(a).  Nor, moreover, is there any dispute that Plaintiff had not served Syngenta

when Syngenta removed this case.  Plaintiff's motion repeatedly concedes that critical fact.  *See*

Pl. Br. 1 (Syngenta removed "before service of process was completed"); *id.* at 3 (Syngenta

removed "six days before the Delaware courts even issued the papers Plaintiff would need to

serve"); *id.* at 4–5 (service was completed "on April 13, 2022" after Syngenta removed "on April

5, 2022"); *id.* at 19 (writ for service was issued "a full 6 days after … Syngenta removed"

(emphasis omitted)).  Plaintiff argues, however, that she can circumvent federal jurisdiction—and

the very MDL coordination Plaintiff's Counsel previously requested—by invoking the forum

defendant exception.  That is mistaken.  That narrow, non-jurisdictional exception to federal

jurisdiction has no application here because no in-forum defendant was "properly served" at the

time of removal.

### A.     The Plain Text Of § 1441(b)(2) Does Not Bar Removal When An In-Forum Defendant Has Not Been "Properly Served" At The Time of Removal.

The statutory text is the clearest guide to a statute's meaning.  *Bernstein v. Bankert*, 733

F.3d 190, 211 (7th Cir. 2013).  And "[w]hen a statute is unambiguous," the Court's "inquiry starts

and stops at the text." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 622 (7th Cir. 2015).  Here, the statutory text of § 1441(b)(2) is plain as day:  Where a federal court has diversity jurisdiction over a case, that case may be removed to federal court solely on the basis of diversity jurisdiction as it always could—unless an in-forum defendant has been properly joined and properly served before removal.

Where federal courts have jurisdiction, the default rule is that they have "a virtually unflagging obligation to exercise" it.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (internal quotation marks omitted); *see also Cohens v. Virginia*, 19 U.S. 264, 404 (1821). Congress, moreover, has seen fit to "grant[] defendants a right to a federal forum."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 137, 140 (2005).  Section 1441(b)(2) creates a narrow exception to those general rules in some instances of diversity jurisdiction, but that exception is inapplicable here.  It applies only where three conditions are satisfied: (1) the civil action is "otherwise removable" (2) "solely on the basis of" diversity jurisdiction and (3) none of "the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  With respect to the first requirement, a civil action must be "***otherwise removable***" on the basis of diversity jurisdiction.  In other words, the exception comes into play only where the federal courts unquestionably have subject matter jurisdiction.

As for the second requirement, the forum-defendant exception applies only to a case removable "***solely on the basis*** of [] jurisdiction under § 1332(a)" (i.e., diversity).  It does not apply, for example, to cases removed under federal question jurisdiction.  *See* 28 U.S.C. § 1331. And it does not apply where, as here, federal jurisdiction is grounded in diversity *and* some other basis.  *See, e.g.*, *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 549 (5th Cir. 2020) (exception did not bar removal based on diversity jurisdiction under § 1332(a) *and* supplemental jurisdiction under

§ 1367).  This requirement furnishes an independent basis to deny Plaintiff's motion to remand because this case was not removed solely on the basis of diversity.  *See infra* Part II.

But Plaintiff's primary gripe here is with the third requirement—that a plaintiff must properly join and serve an in-forum defendant before she can invoke the forum defendant exception.  Once again, the statute says the exception applies (and the case therefore "may not be removed") only "***if***" a defendant who "is a citizen of the State in which such action is brought" is "properly joined and served."  "[T]he rules of grammar govern statutory interpretation."  *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (internal quotation marks omitted).  At the risk of stating the obvious, the word "if" "introduc[es] a condition."  WEBSTER'S NEW COLLEGIATE DICTIONARY 412 (2d ed. 1949); *see United States v. Flores*, 664 F. App'x 395, 399 (5th Cir. 2016) (collecting grammar cites).  The word "if" serves its ordinary function here:  The statute says that, "if" certain conditions have already occurred, then the case "may not be removed."  But "if" those conditions have *not* occurred, the inverse is true—the case may be removed because the exception does not prevent a federal court from hearing a case "otherwise removable."  *Cf. Metraflex Co. v. Flex-Hose Co.*, 2011 WL 4001144, at *5 (N.D. Ill. Sept. 8, 2011) (explaining similar conditional statement and its inverse); *London Assur v. Companhia De Moagens Do Barreiro*, 167 U.S. 149, 165 (1897) (similar).

The remainder of the statutory phrase identifies those conditions that the "if" anticipates:  A defendant in the case must be "a citizen of the State in which such action is brought," and that defendant must be "***properly joined and served***."  Proper joinder and proper service are therefore distinct requirements.  *See* SCALIA & GARDNER, READING LAW 147–48 (2012) (explaining how a prepositive modifier—like "properly"—applies across an entire parallel series—like "joined and served").  Federal law consistently distinguishes between joinder (i.e., naming a party in a lawsuit)

and service of process (i.e., commencing legal process against that party).  *Compare* Fed. R. Civ. P. 19–20 (joinder), *with* Fed. R. Civ. P. 4(c)–(m) (service).  The removal statutes too—in provisions other than § 1441(b)(2)—make the same distinction.  *See, e.g.*, 28 U.S.C. § 1446(b)(2)(A) (requiring consent to removal from defendants "who have been properly joined and served").  Whether a party has been "properly joined" implicates doctrines like fraudulent joinder and misjoinder.  *See Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017); *Brazell v. Waite*, 525 F. App'x 878, 884 (10th Cir. 2013).  Whether a party has been "properly served" implicates local rules for service of process.  *See* 14C Wright & Miller, Fed. Prac. & Proc. § 3730 (4th ed.).  To invoke the forum defendant exception, then, a plaintiff must clear both hurdles.

The text of § 1441(b)(2) is straightforward.  So too is its application here.  Although it was not removed "solely" on this basis, *see infra* Part II, this case is "otherwise removable" on diversity grounds as Plaintiff concedes.  Syngenta "is a citizen of" Delaware, ECF 1 at 4–5, "the State in which [this] action [wa]s brought."  And Syngenta does not argue that it was fraudulently "joined" in this case.  When Syngenta removed this case, however, Plaintiff had not "properly served" Syngenta, as Plaintiff acknowledges repeatedly.  *Supra* at 5.  Accordingly, the forum defendant exception does not apply, and this case belongs in federal court.

Plaintiff eschews this result, but she never offers her own reading of the statute or seriously attempts to parse its text.  Instead, she suggests only that the statute "could" mean four different things, Pl. Br. 9–11, while insisting it cannot possibly mean the one thing its terms clearly indicate—that a plaintiff must properly serve an in-forum defendant prior to removal to invoke the exception.  Plaintiff's drive-by ruminations are meritless.  The phrase "and served" cannot mean service "at any time prior to a remand motion," *id.* at 9, because that condition is keyed to when a case may first be "*removed*" not when it may be remanded.  It cannot mean service "at any time

within the deadlines set by state law," *id.* at 10, because § 1441(b)(2) already makes "*proper service*"—that is, service in compliance with state law—a pre-condition for the exception's application. It cannot mean "removal is not permitted until service is completed," *id.*, because the statute already furnishes an exhaustive list of conditions for when a case "may not be removed," and completion of service is not one of them. And it cannot mean that "the presence of [a] forum defendant on a complaint is enough to trigger" the bar so long as service "is attempted within a reasonable time" to give notice. *Id.* at 10–11. "Proper service" means proper service, not an intent to furnish proper service sometime in the future. That is why the removal statute itself distinguishes between actual "service" and mere "receipt" (i.e., notice) of pleadings elsewhere. *See* 28 U.S.C. § 1446(b)(1), (b)(2)(B).

Plaintiff's remaining arguments transgress a centuries-old rule of statutory interpretation: Courts interpreting a statute must give meaning to "*every word*." *Wash. Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879) (emphasis added); *see, e.g.*, *Preap*, 139 S. Ct. at 965, 969 (interpreting statute based on the word "the"). Plaintiff suggests that nothing in § 1441(b)(2) addresses when a plaintiff must serve an in-forum defendant to prevent a case from being removed. Pl. Br. 9 ("The statute's plain language cannot definitively resolve *when* a defendant must be served because § 1442(b)(2) is silent on that topic."). But that requires ignoring the word "if." As explained above, that word introduces a conditional phrase keyed to when a case may or "may not be *removed*." *Supra* at 7. Plaintiff, it seems, has confused two distinct concepts—(a) when a plaintiff must serve an in-forum defendant to invoke the forum defendant exception to prevent removal and (b) when a plaintiff must serve an in-forum defendant to comply with a court's rules for service of process to prevent dismissal. *See* Pl. Br. 10 n.23. Section 1441(b)(2) speaks to the former and not the latter.

Elsewhere, Plaintiff says that § 1441(b)(2) requires a plaintiff only to refrain from "improperly joining" an in-forum defendant or "improperly delaying service." *Id.* at 13–14. Once again, Plaintiff's reading fails to give meaning to every word, this time by reading proper service out of the statute. A plaintiff may still fail to "properly serve" an in-forum defendant before removal without delaying service. And a plaintiff may still fail to "properly serve" an in-forum defendant before removal without engaging in fraudulent joinder or misjoinder. As explained above, the statute clearly imposes two distinct requirements on a plaintiff: She must properly join *and* properly serve an in-forum defendant to prevent a case from being removed. *Supra* at 7–8.

**B.      All Circuits That Have Considered This Question—And Most District Courts In This Circuit—Reject Plaintiff's Reading Of § 1441(b)(2).**

Plaintiff observes that "some courts" have followed the plain meaning of the statute's text and held the forum-defendant exception does not apply where removal occurs before a plaintiff properly joins and serves an in-forum defendant. Pl. Br. 8. That is a breathtaking understatement. In fact, every circuit that has confronted this question agrees the statutory text means what it says.

The Third Circuit, where this case originated, has conclusively determined that "the language of the forum defendant rule in section 1441(b)(2) is unambiguous" and rejected the idea that some perceived legislative purpose or absurdity could justify ignoring the statutory mandate. *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152–54 (3d Cir. 2018). Others agree. The Sixth Circuit has held that, "[w]here there is complete diversity of citizenship, as [the plaintiff] concedes there was, the inclusion of an *unserved* resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)." *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001). The Second Circuit likewise concluded that "[b]y its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705–07 (2d Cir. 2019). The Fifth Circuit, too, agreed

that "the text is unambiguous" and rejected "the same absurdity argument" Plaintiff presses here

because the interpretation outlined *supra* at 6–8 "gives meaning to each word." *Tex. Brine Co.,*

*LLC v. Am. Arb. Ass'n*, 955 F.3d 483, 485–87 (5th Cir. 2020); *see* Pl. Br. 11–16.

The Seventh Circuit, for its part, has not squarely weighed in.  But what it has said accords

with its sister circuits.  *See Morris v. Nuzzo*, 718 F.3d 660, 670 n.3 (7th Cir. 2013) (speaking

approvingly of "a service-based exception to the forum defendant rule").  Unsurprisingly, district

courts in this Circuit largely agree "there is no question that the text of [the forum defendant

exception] is unambiguous." *Wragge v. Boeing Co.*, 532 F. Supp. 3d 616, 621 (N.D. Ill. 2021).[4]

Perhaps most importantly, "[c]ourts in *this district* have likewise followed this plain language

approach." *Knightsbridge Mgmt., Inc. T/A Knightsbridge Rest. Grp. v. Zurich Am. Ins. Co.*, 518

F. Supp. 3d 1248, 1253 (S.D. Ill. 2021) (emphasis added).[5]

Plaintiff nowhere engages with the landslide of decisions across the country, in this Circuit,

and from this District rejecting her position.  At one point she suggests these opinions "only

underscore[] the doubt as to the propriety of snap removal."  Pl. Br. 11 n.24.  That gets things

backwards:  This litany of cases saying the statutory text is "plain," "unambiguous," and "clear"

suggests no "doubt" as to the statute's meaning.  Indeed, the closest she comes to an argument is

her fleeting assertion that the opinions on her side of the ledger are "better-reasoned." *Id.* at 8.[6]

---

[4]   *See also, e.g.*, *D.C. ex rel. Cheatham v. Abbot Labs. Inc.*, 323 F. Supp. 3d 991, 993–97 (N.D. Ill. 2018); *Graff v. Leslie Hindman Auctioneers, Inc.*, 299 F. Supp. 3d 928, 937 (N.D. Ill. 2017); *Whipkey v. Eli Lilly & Co.*, 2020 WL 3248472, at *4 (S.D. Ind. June 16, 2020); *Serv. Corp. Int'l v. Stericycle, Inc.*, 2020 WL 6565253, at *2–4 (N.D. Ill. Nov. 9, 2020); *W. Bend Mut. Ins. Co. v. MSPPR, LLC*, 2021 WL 463259, at *2–3 (N.D. Ill. Feb. 9, 2021); *Tavistock Rest. Grp., LLC v. Zurich Am. Ins. Co.*, 2021 WL 1614519, at *3 (N.D. Ill. Apr. 26, 2021).

[5]   *See also, e.g.*, *Foshee ex rel. East v. Abbot Labs.*, 2022 WL 1063767, at *2 (S.D. Ill. Apr. 8, 2022); *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, 2013 WL 656822, at *4 (S.D. Ill. Feb. 22, 2013); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Relevant Prod. Liab. Litig.*, 2010 WL 3937414, at *11 (S.D. Ill. Oct. 4, 2010); *Sheffer v. Cottrell, Inc.*, 2009 WL 1231037, at *3 (S.D. Ill. Apr. 30, 2009); *Massey v. Cassens & Sons, Inc.*, 2006 WL 381943, at *3 (S.D. Ill. Feb. 16, 2006).

[6]   Plaintiff also urges this Court to follow "the better-reasoned decisions *in … this District*" adopting her view of the statute.  Pl. Br. 8 (emphasis added).  She cites no such decisions, and Syngenta has been unable to find a single

Against this overwhelming precedent, Plaintiff puts great emphasis on an unpublished order that consists of *a single paragraph* of reasoning.  Pl. Br. 2.  Here is the opinion in its entirety:

> The motion to remand in *Klock v. Monsanto Co.* is granted.  *See* Dkt. No. 2368.  On this issue, which has divided the courts, this Court agrees with the view that interpreting the statute to permit removal before service of process would create absurd results.  *See, e.g.*, *Black v. Monster Beverage Corp.*, No. EDCV-15-02203-MWF-DTB, 2016 WL 81474, at *3-5 (C.D. Cal. Jan. 7, 2016); *Phillips Constr., LLC v. Daniels Law Firm, PLLC*, 93 F. Supp. 3d 544, 547–56 (S.D.W. Va. 2015); *see also Chen v. BioPharmX Corp.*, Case No. 17-cv-05725-VC, Dkt. No. 34.  Absent intervening authority from the Ninth Circuit or Supreme Court, this order will govern all pending and future cases in this multidistrict litigation proceeding.

*In re: Roundup Prods. Liab. Litig.*, 2019 WL 423129, at *1 (N.D. Cal. Feb. 1, 2019).  Plaintiff cites one other MDL case from 2014, but that court specifically lamented "[t]he dearth of instructive circuit-level cases" to consult for guidance on the meaning of § 1441(b)(2).  *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 67 F. Supp. 3d 952, 958 (N.D. Ill. 2014).  Without the benefit of later decisions from the Second, Third, and Fifth Circuits, that court felt compelled to "look[] beyond the language" of § 1441(b)(2) and "rely on the underlying purpose" of a prior version of the statute, rather than "simply apply its language."  *Id.* at 959–60.

It bears emphasis that no circuit in the country—indeed, no precedential opinion anywhere—has adopted Plaintiff's position.  And still she asks this Court to create a circuit split and "put an end to snap removal."  Pl. Br. 1–2.  Those few district courts that have gone Plaintiff's way, however, either did so by elevating an unstated legislative purpose over the plain text of the statute or were acting without the more recent guidance from federal circuit courts.[7]

---

case in the Southern District of Illinois adopting the Plaintiff's view of § 1441(b)(2).  And yet Counsel repeated this misrepresentation in remand motions in four other cases.  *See supra* at 1 n.1 (citing remand motions in *Scobey*, *Anderson*, *Shelburne*, and *Magee*).  Across all of these pleadings, Counsel do not cite a single decision of any kind on any topic from "this District."

[7]   *See, e.g.*, *Norwegian Air Shuttle ASA v. Boeing Co.*, 530 F. Supp. 3d 764, 769–70 (N.D. Ill. 2021); *Bowman v. PHH Mortg. Corp.*, 423 F. Supp. 3d 1286, 1289, 1292–93 (N.D. Ala. 2019); *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316–18 (D. Mass. 2013); *Holmstrom v. Harad*, 2005 WL 1950672, at *2 (N.D. Ill. Aug. 11, 2005).

This Court should not adopt that atextual approach because it runs counter to Seventh Circuit precedent. *See INTL FCStone Fin. Inc. v. Jacobson*, 950 F.3d 491, 499 (7th Cir. 2020) ("Plain text trumps purpose."); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012) ("When a text can be applied as written, a court ought not revise it by declaring the legislative decision 'absurd.'").  It also flouts recent Supreme Court precedent that: (1) adopted the "ordinary meaning" of a neighboring removal statute provision; (2) refused to speculate about what "Congress had wanted" based on language it "*didn't* use"; and (3) rejected concerns about "policy consequences" and how a plain reading "will invite gamesmanship." *BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1537, 1539, 1542 (2021).  At every turn, while interpreting text a few doors down, the Court rejected the very arguments Plaintiff presses here.

### C.    Any Gamesmanship Results From Decisions Plaintiff's Counsel Have Made.

Lacking support for her position in the text or precedent, Plaintiff repeatedly resorts to complaints about supposed "gamesmanship" in Syngenta's decision to remove this case.  Pl. Br. 2, 3, 15.  But it is Plaintiff's Counsel who have made repeated and calculated efforts to avoid federal jurisdiction, filing state courts suits by plaintiffs who neither reside in the forum state nor allege injury arising there.  And they have done so seemingly to evade MDL coordination in the District—and the very Court—they requested before the JPML.  Any suggestion of gamesmanship gets things backwards once again.

As explained above, the plaintiff who initially moved for MDL coordination of related paraquat cases asked the JPML to send those cases to Judge Chen in the Northern District of California.  Plaintiff's Counsel, however, suggested *this* District and *this* Court would be an appropriate destination.  The JPML heeded that suggestion, assigning the MDL to this Court.  After being appointed to the PEC, Counsel resigned.  The Court accepted Counsel's resignation but stated that it was "unclear why this request has been submitted." *MDL*, Dkt. 207; *supra* at 2–3.

13

The reasons soon became readily apparent.  Less than a month later, Plaintiff's Counsel filed suit against Syngenta and Chevron in Pennsylvania state court—knowing full well that Chevron's domicile in that State could preclude removal, and eventual consolidation, into this MDL.  More suits with similar apparent aims soon followed.  *See supra* at 3 n.2.  This suit filed in Delaware Superior Court is no exception:  Plaintiff is not a citizen of Delaware, and she alleges no paraquat-related injury in Delaware.  *See, e.g.*, ECF 1-1 ¶¶ 7, 20 (Plaintiff is "a resident of the State of Tennessee").  The only logical conclusion is that Plaintiff's Counsel filed this lawsuit—a diversity action admittedly susceptible to federal court jurisdiction—in Delaware state court simply because Syngenta is domiciled there, hoping to skirt MDL coordination.  Elsewhere, Counsel have been refreshingly frank about their goals:  Rather than having to "take [their] place in line," they want to "maintain[] control over this litigation," and jump ahead of the 1,000 earlier-filed cases currently pending in the MDL.  *See, Leonberger v. Syngenta Crop Protection LLC*, No. 1:22-cv-00960 (N.D. Ill. Mar. 8, 2022), Dkt. 21 at 4–5.

It is no wonder, then, that Syngenta has responded to Counsel's jurisdictional games with continued "diligence."  *D.C. ex rel. Cheatham v. Abbott Lab'ys Inc.*, 323 F. Supp. 3d 991, 997 (N.D. Ill. 2018).  Counsel bemoans that Syngenta "monitor[s] the docket[]" and removes as soon as it is able.  Pl. Br. 2, 6, 13.  But something would be amiss if Syngenta, with over 1,000 paraquat-related cases currently pending against it, did *not* monitor state court dockets across the country.  Instead, Counsel's real gripe is with the consolidation it sought in this Court and the plain text of § 1441(b)(2).  Yet "Congress wrote the statute it wrote," *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 296 (2011), and as one court in this District has explained, "[t]o the extent that permitting an in-forum defendant to remove prior to being served may result in gamesmanship, that flaw is for Congress to fix, not this Court."  *Knightsbridge Mgmt.*, 518 F. Supp. 3d at 1254.

14

Counsel's accusations of gamesmanship thus flip the term on its head.  Counsel, not Syngenta, pushed for MDL consolidation in this District and this Court.  Counsel, not Syngenta, then sought to evade coordination by strategically filing suits where Syngenta or Chevron are domiciled (Delaware and Pennsylvania) or where it could find a nominal in-forum defendant (Illinois), and arguing those cases were not "related" to those in the MDL.  And Counsel, not Syngenta, filed many of those suits on behalf of plaintiffs who lack any real connection to the forum states.  Although Counsel are correct that "a plaintiff is a master of their complaint," Pl. Br. 20, this only confirms that Counsel is responsible for any gamesmanship here.

## II.  BECAUSE THIS CASE SATISFIES FEDERAL QUESTION JURISDICTION, IT WAS NOT REMOVED "SOLELY" BASED ON DIVERSITY UNDER § 1441(b)(2).

As explained above, the forum defendant exception has no application here because Plaintiff had not properly served Syngenta at the time this case was removed to federal court. Plaintiff's remand motion should be denied for that reason alone.  But even if the Court is inclined to depart from the plain reading of the "if … properly … served" requirement, it should deny the motion for the independent reason that under § 1441(b)(2) this case was not "removable solely on the basis of" diversity jurisdiction.  This Court also has federal question jurisdiction under § 1331 and supplemental jurisdiction under § 1367(a), and Syngenta removed on those additional bases. *See* ECF 1 at 2–3, 6–12.  Although Plaintiff purports to assert only state-law causes of action, her claims necessarily invoke legal duties under a comprehensive federal statute (FIFRA) that is enforced by a federal agency (the EPA).  Those claims therefore raise substantial questions of federal law, which confer federal question jurisdiction on this Court.

### A.  Plaintiff's Claims Implicate A Federal Issue That Is Necessarily Raised, Actually Disputed, Substantial, And Capable Of Resolution In Federal Court.

Syngenta has explained elsewhere why claims like Plaintiff's "necessarily raise a stated federal issue, [one that is] actually disputed and substantial, [and] which a federal forum may

entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  Rather than reiterate this affirmative argument here, Syngenta respectfully directs this Court to Part II.A of its brief opposing the motion to remand in *Parker*.  *See Parker v. Syngenta Crop Protection, LLC,* No. 3:21-pq-01654-NJR (S.D. Ill. Jan. 21, 2022), Dkt. 28 at 12–17.

**B.    Plaintiff's Arguments Against Federal Question Jurisdiction Are Mistaken.**

Plaintiff's arguments against federal question jurisdiction mischaracterize the applicable law and attempt to portray this lawsuit as implicating only "garden-variety state-law claims."  Pl. Br. 16.  To the contrary, this lawsuit implicates complex and disputed federal regulatory issues under FIFRA concerning the EPA's authority to regulate pesticides and its determination that there is no association between paraquat exposure and Parkinson's disease.  The complaint repeatedly references federal duties owed by those distributing pesticides under FIFRA, and alleges Syngenta and Chevron violated these obligations.  *See, e.g.,* ECF 1-1 ¶¶ 48, 50–57.  To be sure, Plaintiff purports to disclaim reliance on federal law, *see id.* ¶ 58; Pl. Br. 18, but the artful-pleading doctrine prevents him from "fram[ing] his action under state law and omit[ting] federal questions that are essential to recovery."  *Burda v. M. Ecker Co.,* 954 F.2d 434, 438 (7th Cir. 1992).

Plaintiff argues that there is no federal-question jurisdiction because FIFRA does not provide for a private right of action.  That is legally mistaken.  In *Grable*, the Supreme Court held that the absence of a federal cause of action does not foreclose federal-question jurisdiction.  To hold otherwise would both "overturn[] decades of precedent" and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one."  *Grable*, 545 U.S. at 317; *see also, e.g.*, *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1018–19, 1024 (finding federal jurisdiction even though underlying statute did not include private right of action where it was "significant to the development of a uniform body of federal securities

16

regulation"); *Ranck v. Mt. Hood Cable Reg. Comm'n*, 2017 WL 1752954, at \*4–5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* despite absence of private right of action).

As a result, Plaintiff's reliance on *In re Roundup Products Liability Litigation*, 2017 WL 3129098 (N.D. Cal. July 5, 2017), is misplaced.  *See* Pl. Br. 17–18.  There, the court declined to exercise jurisdiction because, in its view, FIFRA does not provide for a federal cause of action, and "there is no colorable *Grable* theory … because FIFRA itself forecloses that possibility."  *In re Roundup*, 2017 WL 3129098, at \*1.  Both rationales are mistaken.  As just explained, federal question jurisdiction is not coextensive with federal causes of action.  But more pressingly, the court in *Roundup*—like Plaintiff here—fundamentally misunderstands the duties FIFRA imposes by claiming that "there cannot possibly be a 'substantial' interest in hearing disputes of this kind in a federal forum."  *Id.*  That is not credible.

The key question in this case and others like it—whether exposure to paraquat leads to an increased likelihood of developing Parkinson's disease—is a disputed question that implicates the existence and scope of Defendants' duties under FIFRA.  Its resolution has broad implications for the federal system as a whole.  The EPA has wide-ranging authority under FIFRA to regulate paraquat and other pesticides, including to review and approve warnings, directions, and packaging to ensure they are "adequate to protect health and the environment."  7 U.S.C. § 136(q)(1)(F).  As the expert agency tasked with regulating pesticides and protecting public health, the EPA has determined the scientific evidence does not support an association between exposure to paraquat and Parkinson's disease.  *See* EPA, Paraquat Dichloride – Interim Registration Review Decision 18 (July 13, 2021), https://bit.ly/3lI978K.  That decision is currently being litigated before a federal appellate court.  *See* Pet. for Review, *Cal. Rural Legal Assistance Found. v. EPA*,

No. 21-71287 (9th Cir. Sept. 23, 2021), Dkt. 1-4.  The stakes of the instant lawsuit thus directly implicate a "substantial" federal interest, one "consistent with the balance of state and federal judicial power as Congress has envisioned it."  *Cf. In re Roundup*, 2017 WL 3129098, at \*1.

## III.   PLAINTIFF'S REQUEST FOR FEES AND COSTS IS FRIVOLOUS.

Finally, Plaintiff argues this Court should "set an example" and order Syngenta to pay fees and costs because its actions here "merit special admonishment."  Pl. Br. 3, 19–20.  She believes it should have been "abundantly clear" to Syngenta that it had no basis to remove this case and that its decision to do so under the plain terms of § 1441(b)(2) was "abusive."  *Id.* at 4, 19.  Never mind that every precedential opinion supports Syngenta's reading of the statute.  *Supra* at 10–11. Never mind, too, that the law of the Third Circuit, where this case originated, has enshrined that view in binding precedent.  *See Encompass Ins. Co.*, 902 F.3d at 152–54.

Plaintiff's argument is meritless.   Syngenta's position is more than "objectively reasonable"; it is plainly correct and has been adopted by every circuit to consider the question. This Court should hold the forum defendant exception did not apply for either (or both) of the reasons provided above.  *Supra* at 5–18.  Syngenta had no obligation to "giv[e] Plaintiff an opportunity" to invoke an exception to diversity jurisdiction and keep this case out of federal court. Pl. Br. 20.  Instead, Syngenta had a clear "right to a federal forum."  *Martin*, 546 U.S. at 137. Because this case was properly removed and there is no basis to remand, this Court may not award fees or costs.  *See* 28 U.S.C. § 1447(c) (permitting award only in "an order remanding the case").

Even if this Court disagrees on the bottom-line question of removal, that still could not justify imposing costs and fees.  The Supreme Court's landmark decision in *Martin* construing the removal statute's fee-shifting provision is instructive.  In that case, everyone—the district court, the circuit court, a unanimous Supreme Court, *even the plaintiff*—agreed that a removal like this one was objectively reasonable:  When a defendant "relied on [favorable] case law" at the time of

18

removal but was "subsequently" prevented from relying on those decisions, the "basis for removal was objectively reasonable." *Martin*, 546 U.S. at 135, 141.   That is just what happened here. Removal, as Plaintiff acknowledges, was entirely "proper under Third Circuit precedent" and Syngenta "relied on" it.   Pl. Br. 8.   There was no guarantee that the JPML would "subsequently" transfer this case to the Southern District of Illinois, but even if it did, the meaning of § 1441(b)(2) would be an "open question" there.   *Id.* at 19.   By all accounts, Syngenta's decision to remove was objectively reasonable at the time.   Plaintiff's expedient of ignoring the most important Supreme Court decision on this issue cannot change that fact.

Plaintiff's argument is especially misguided considering this area of the law involves competing rights.   A plaintiff, as master of her complaint, has a right to choose where to initiate her case.   But where that case falls within federal courts' subject-matter jurisdiction—as Plaintiff concedes this case does—"Congress granted [defendants] a right to a federal forum."   *Martin*, 546 U.S. at 140.   The removal statute's fee shifting provision therefore may not be used to "discourage" defendants from exercising that right.   *Id.*   Based in part on this solicitude for a defendant's right to remove, the Supreme Court has instructed that dilatory conduct or bad faith by plaintiff or her counsel are relevant when choosing whether to award costs.   *Id.* at 141.   Accordingly, this Court may consider Counsel's behavior in these cases originating in Delaware state court.

When Syngenta notified Counsel that it had removed these cases as it was entitled to under Third Circuit law, Plaintiff's Counsel responded that Syngenta's papers contained "material factual misrepresentations" because Syngenta had been served before it removed the case.   Indeed, Counsel asserted no less than three times that it had properly served Syngenta before removal and threatened to "seek sanctions" on that basis:

- "***Syngenta was served*** with both complaints at 1:55 pm eastern time" on Monday April 18, 2022.

- "[***E***]***ach Defendant had in fact been served*** with a copy of both Complaints before Syngenta filed the notices of removal."

- "Because ***all Defendants were properly served*** in advance of Syngenta's removal, the for[u]m-defendant exception applies …."

ECF 6-2 at 6 (emphases added).  Because it had not received proof of "proper service … under the Delaware rules," Syngenta requested documentation from Plaintiff's Counsel.  *Id.* at 5.  When Counsel responded by producing "an un-issued form of summons," Syngenta informed Counsel that this did not constitute "serv[ice] in accordance with Delaware law."  *Id.* at 3.  Rather than correcting the false accusations in their own emails—or at least confessing their misunderstanding of Delaware's rules for service of process—Counsel responded by insisting, once again, that Syngenta had been "served," demanding that Syngenta "consent to remand" the case, and threatening "to take this up with the court."  *Id.* at 2–4.  Syngenta indicated it was open to considering any "applicable authority" supporting Plaintiff's position, but Counsel supplied none.  Instead, Counsel declared (with no explanation whatsoever) that Syngenta's removal papers "still contain material misstatements."  *Id.* at 2.  Counsel then consented to transfer of these cases and filed the instant motion, in which they materially misstate the law to this Court.  *Supra* at 11 n.5.

This Court may need to "set an example," as Plaintiff says.  Pl. Br. 20.  But Syngenta respectfully suggests the lesson may best be directed elsewhere.

Dated May 26, 2022

Respectfully submitted,

*/s/ Ragan Naresh*
Ragan Naresh, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 389-5000

Michael J. Nester
DONOVAN ROSE NESTER P.C.
15 North 1st Street, Suite A
Belleville, IL 62220
Tel.: (618) 212-6500
Fax: (618) 212-6501
mnester@drnpc.com

Leslie M. Smith, P.C.
Bradley H. Weidenhammer, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel.: (312) 862-2000

John P. DiTomo
Lauren K. Neal
Alexandra M. Cumings
MORRIS NICHOLS
1201 North Market Street
Wilmington, DE 19801
Tel.: (302) 658-9200
jditomo@morrisnichols.com
lneal@morrisnichols.com
acummings@morrisnichols.com

*Counsel for Defendant Syngenta Crop
Protection LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 26, 2022, I electronically filed the foregoing with the Clerk of this

Court by using the CM/ECF system, which will provide notice to all users of record.

*/s/ Ragan Naresh*
Ragan Naresh
